DU PONT v. DU PONT et al.

(District Court, D. Delaware. July 24, 1917.)

No. 340.

1. CORPORATIONS ⊚⟹410—STOCKHOLDERS—MANAGEMENT OF CORPORATE AFFAIRS.

Where a court has found that a corporation has an inchoate right to acquire property the title to which is in another, whether it will exercise such right must be determined by the corporation itself through its directors or stockholders, and the court is without power to substitute its judgment for theirs, even though the benefit to the corporation of exercising the right is clear.

2. CORPORATIONS ⊚⟹157—SUIT BY STOCKHOLDERS—ACCOUNTING FOR DIVIDENDS RECEIVED.

On a finding by the court in a stockholders' suit that certain defendants acquired and hold stock of the corporation as trustees ex maleficio for the corporation and at its election are accountable for the same with all dividends received thereon, dividends paid in stock or bonds which are still held by defendants unconverted cannot be regarded on an accounting as cash dividends, but are recoverable in specie.

In Equity. Suit by Philip F. Du Pont against Pierre S. Du Pont and others. Supplemental opinion on settlement of decree.

For prior opinion, see 242 Fed. 98. See, also, 234 Fed. 459.

John G. Johnson, William A. Glasgow, Jr., Henry P. Brown, and Frank P. Pritchard, all of Philadelphia, Pa., and Robert Penington, of Wilmington, Del., for plaintiff.

George S. Graham, of Philadelphia, Pa., William H. Button, of New York City, and William S. Hilles and John P. Laffey, both of Wilmington, Del., for defendants.

THOMPSON, District Judge. As a preliminary to a discussion of the questions raised by counsel at the argument upon settlement of a decree, some of the findings and conclusions contained in the opinion filed April 12, 1917, require modification in order to avoid a construction inconsistent with the intention of the court.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1. In the opinion it is stated:

"Between March 1, 1915, and the time of the trial in July, 1916, cash dividends equivalent to 183 per cent. had been paid upon the stock of the powder company."

The evidence shows that of the dividends referred to, 5 per cent. paid upon the powder company's stock was in Atlas Powder Company preferred stock, that upon the E. I. Du Pont de Nemours & Co. stock the equivalent of 76.40 per cent. on the powder company stock was paid in Anglo-French bonds, and that dividends the equivalent of 101.60 per cent. were paid in cash. The statement in the opinion is modified accordingly.

2. It was found in accordance with the defendants' thirty-second request for finding of fact:

"(32) That on January 17 and 19, 1915, T. Coleman Du Pont by telegram and letter, withdrew his proposition."

In order that this finding may not appear inconsistent with the finding in response to the plaintiffs' twenty-fourth request, it is qualified by adding thereto:

"T. Coleman Du Pont's withdrawal of his offer was coupled with his expressed intention of renewing that offer as soon as he returned from Rochester."

3. It was found in accordance with the defendants' sixtieth finding of fact:

"(60) That the credit of the powder company was not impaired by the negotiation of the loan with J. P. Morgan & Co. or used in effecting that loan, in any manner by Pierre S. Du Pont and his associates."

The finding is modified by striking out the words "or used in effecting that loan."

4. It was found in accordance with the defendants' forty-second request for finding of fact:

"(42) That the disinterested members of the board of directors at the meeting of the board on March 10, 1915, voted against the acquisition of this stock, with the exception of two of the complainants and William Du Pont."

This finding is now modified by adding thereto, "with the exception of Mr. Connable, who was present and did not vote."

5. The fifth conclusion of law requested by the plaintiffs was adopted as a general basis for the method of accounting and as a declaration of the right in the powder company through which E. I. Du Pont de Nemours & Co. acquired its right, subject to the decision of the stockholders of E. I. Du Pont de Nemours & Co. whether the company should avail itself of the right to acquire the stock.

After the opinion was filed, the plaintiffs asked for an interlocutory decree, directing the individual defendants (with the exception of Henry F. Du Pont and Eugene E. Du Pont) and the Du Pont Securities Company to file in the cause a statement showing in detail the dividends paid since the second day of March, 1915, with interest, and the amount derived from the sale of the debenture stock of E. I. Du Pont de Nemours & Co. received in exchange for the preferred stock

of the E. I. Du Pont de Nemours Powder Company purchased from T. Coleman Du Pont, with interest, together with a statement showing the amount paid to T. Coleman Du Pont as the purchase money for the 63,314 shares of common stock and 14,599 shares of preferred stock of the E. I. Du Pont de Nemours Powder Company, with interest on that amount from the date upon which the said purchase was consummated. The defendants thereafter on May 1, 1917, voluntarily filed a statement of record, which it is unnecessary to set out here in full, showing:

Dividends paid on 63,314 shares of common stock of powder company, plus interest (exclusive of shares of E. I. Du Pont de Nemours & Co. and inclusive of shares of the Atlas Powder Company preferred stock at the value fixed by the dividend rate) .......................................................$1,920,197.53

Dividends paid on 126,628 shares of common stock of E. I. Du Pont De Nemours & Co., plus interest (inclusive of Anglo-French bonds at their value fixed by the company in declaring the dividend) ..........................................................17,916,110.29

Dividends paid on preferred and debenture stock plus interest.. 40.639.97

Received upon sale of debenture stock, plus interest. ........... 1,593,922.00

                                                    21,470,869.79

Amount paid T. Coleman Du Pont, plus interest................15,708,880.66

    Apparent balance in excess of cost...................... 5,761,989.13

As stated in the findings from the evidence produced at the trial the receipts in dividends, exclusive of the 126,628 shares of stock of E. I. Du Pont de Nemours & Co., were equivalent to $183 per share upon stock for which Pierre and his associates paid $200 per share. As the record then stood, therefore, if the company acquired the stock, it would have been obliged to pay out of its treasury $17 per share to make up the price of $200 per share paid for the common stock. In view of the present showing that the defendants have received over $5,000,000 in excess of what the stock cost, counsel for the plaintiffs contend that there remains no question of business policy to be determined, and therefore a decree directing the transfer of the stock and the payment of the difference should be entered without any action of the corporation or stockholders, because the stockholders could have no honest difference of opinion as to the benefits to be derived by the company from the purchase of the stock. I am not prepared to adopt this view.

[1] No principle of law or equity heretofore announced has gone so far as to assert that a court of equity may substitute its judgment for that of the corporation through its directors or stockholders in determining whether it should or should not acquire an asset to which it has no title but merely an inchoate right to assert a title. In all of the numerous cases cited by the plaintiffs, the decisions holding that action by stockholders contrary to the interests of the corporation at a corporate meeting would not be upheld, because it would be a fraud by the majority upon the minority, involved substantially the questions whether the corporation would rescind a contract parting with some of its assets, or would ratify the transfer of its assets where the transaction in relation to the assets was clearly an injury to the company

and in violation of its rights. It should be borne in mind that the rights of the company in the present case arise out of pending negotiations for purchase of its own stock; the amount of stock to be purchased and the price to be paid never having been determined by any affirmative corporate action. The defendants in acquiring the stock have been held to be trustees ex maleficio for the corporation, accountable to it at its election. The conclusion arrived at in the opinion heretofore filed that the question must be determined for the company by a meeting of its stockholders will therefore be adhered to. If the court is in error in declining to extend the doctrine of the cases illustrated by Gamble v. Queens County Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527, the plaintiffs will have an opportunity to have the error corrected in the appellate court.

[2] But the argument of counsel for the plaintiffs that no necessity arose for any preliminary action by the stockholders was also based upon their conclusion that an accounting would show no necessity for the payment of any funds out of the treasury of the corporation. This conclusion was based upon the statements filed of record by the defendants, showing a balance of value received in excess of cost, and the claim that the company is entitled to be repaid in cash for whatever the defendants received in dividends, whether those dividends were in the form of cash, stocks, or bonds. This position is, in my opinion, untenable. If the company is entitled to the benefit of the entire transaction, then what it is entitled to receive is what the defendants have derived from the transaction and have held or now hold under the constructive trust which has arisen in favor of the company. I am unable to distinguish between the rights of the company to the stock of E. I. Du Pont de Nemours & Co. received as a dividend upon the common stock of the powder company and its rights to the Atlas Powder Company stock and the Anglo-French bonds, also received as dividends. As was very forcibly pointed out by the counsel for the defendants at the argument, dividends paid by the corporations in stock or bonds cannot be regarded as cash payments in an accounting if the stock and bonds remain in the hands or control of the defendants unconverted. There has been no assertion by the plaintiffs of a right to demand the cash value of the 126,628 shares of stock of E. I. Du Pont de Nemours & Co., and the only ground upon which they rested their claim at the argument that the value of the Anglo-French bonds and the Atlas Company stock at the time of the declaration of the dividends should be paid in cash to the company was that the defendants, having no right as trustees to receive and hold the dividends, must account for them at the value at which they received them. The answer to that contention is that, as they claim that a trust has arisen in favor of the company, the company must take the product of the trust as it stands and cannot claim the stock dividends in specie in one instance and in the cash value of stock and bond dividends in the other instance. For all that appears, therefore, the company, upon the statement of an account would be charged with the value of the stock and bonds which it received, and a cash payment out of its treasury might be required to balance the transaction. Other questions are presented which can only be answered upon an accounting.

It appears that a large part of E. I. Du Pont de Nemours & Co. stock has been pledged by the securities company as security for a loan of $10,000,000 upon its notes, and that the common stock of the powder company has been distributed in dividends to the stockholders of the securities company. The amount of stock of either company, which can be reached in the hands of any of the defendants, can only be ascertained upon an accounting, and the amount of stock of E. I. Du Pont de Nemours & Co. necessary to make up a deficiency in unpledged stock, or the amount of the incumbrances upon pledged stock with which the defendants should be charged in an accounting, in case the equity in the pledged stock should be decreed to be in the company, is also a question to be determined upon an accounting. The contention that, in the light of the present record, the stock could be acquired without payment of any funds out of the company's treasury cannot therefore be sustained.

Moreover, the right to elect to take the stock is in E. I. Du Pont de Nemours & Co. and not in the powder company.

The plaintiff's present claim of a right to a transfer of the stock and an accounting to E. I. Du Pont de Nemours Powder Company, based upon the fifth conclusion of law, is asserted upon the ground that, when the bill was filed, the plaintiff "was not informed as to exactly the relations that existed between the E. I. Du Pont de Nemours Powder Company and the E. I. Du Pont de Nemours & Co.," and that the contract under which the E. I. Du Pont de Nemours & Co. purchased the property of the E. I. Du Pont de Nemours Powder Company is not in the record.

It is averred in the bill that E. I. Du Pont de Nemours & Co. purchased all the assets and assumed all the liabilities of the E. I. Du Pont de Nemours Powder Company. That averment is admitted in the answers of Pierre S. Du Pont, E. I. Du Pont de Nemours Powder Company, E. I. Du Pont de Nemours & Co. and the Du Pont Securities Company, and it was accepted as an uncontested fact at the trial that the chose in action represented by the claim in the present suit had passed to E. I. Du Pont de Nemours & Co. Moreover, the bill prays for a transfer of the stock and an accounting to the E. I. Du Pont de Nemours & Co.

Counsel for the plaintiffs call attention to the fact that E. I. Du Pont de Nemours & Co. in its answer disclaims any interest whatsoever in the stock formerly owned by T. Coleman Du Pont. If this were taken as a ground for declining to sustain the right of E. I. Du Pont de Nemours & Co., the plaintiffs would find themselves confronted by a dilemma, for the answer of E. I. Du Pont de Nemours Powder Company also disclaims any interest whatsoever in the stock.

The rights of the powder company having passed to E. I. Du Pont de Nemours & Co., the decision whether the latter company shall avail itself of its rights must be determined at a meeting of its stockholders. The fifth conclusion of law for the plaintiffs will be construed accordingly.

6. At the argument upon settlement of a decree, controversy arose over the question whether the acts of any of the individual defendants, excepting Pierre S. Du Pont, constituted a violation of duty owed

to the powder company and a fraud upon its rights in the acquisition of stock which would raise a constructive trust in favor of the powder company. The evidence did not connect Eugene E. Du Pont and Henry F. Du Pont with any interest in the stock either at the time of its acquisition or at the corporate meetings at which the question of its acquisition was voted upon. This is apparently conceded by the plaintiffs, and the bill will be dismissed as to those two defendants.

It was argued by counsel for the defendants that, under the court's findings of fact and conclusions of law, without, however, conceding the correctness of the findings and conclusions, the bill could not be sustained against any of the individual defendants except Pierre S. Du Pont. I do not coincide in this view of the case. Irenee Du Pont, Lammot Du Pont, A. Felix Du Pont, John J. Raskob, and Robert Rulith Morgan Carpenter participated with Pierre in violation of the duties which they owed to the powder company and in fraud of its rights, and they were parties to the purchase of the whole of T. Coleman Du Pont's stock and to the organization of the Du Pont Securities Company for the purpose of financing the purchase and holding the stock. As to them, therefore, a constructive trust arose which makes them jointly and severally accountable to the company, at its election, for the stock and all cash, stock, and bond dividends thereon, with interest, upon payment of the cost, with interest, and their reasonable expenses. Whether the commission paid to J. P. Morgan & Co. is a proper expense need not be determined until a decree for accounting is entered. The Du Pont Securities Company, acquired the stock subject to the right of the E. I. Du Pont de Nemours Powder Company, which has passed by assignment to the E. I. Du Pont de Nemours & Co.

Harry G. Haskell, Harry F. Brown, William Coyne, and John P. Laffey, however, stand in a different relation to the transaction. Their acts in taking part in the directors' meetings at a time when they were interested in the acquisition of stock in the Du Pont Securities Company constituted a violation of their duties to and a fraud upon the powder company, and, as to the stock distributed to them as dividends upon their securities company stock, they became trustees ex maleficio and are accordingly accountable. The extent of the accountability of the several defendants can only be determined upon an accounting.

Counsel for the defendants have already presented a form of interlocutory decree covering the question whether E. I. Du Pont de Nemours & Co. shall or shall not acquire the stock, and all cash and stock and bond dividends, together with interest, and covering the manner of conducting a stockholders' meeting for voting upon that question.

Counsel for the plaintiffs have presented a form of final decree, but no form of decree covering the question of acquisition of the stock or the method of holding a stockholders' meeting. Counsel for the plaintiffs may therefore submit a form of decree covering those points, and, if either side desire to be further heard, application may be made to have a time set for hearing counsel for all parties.